# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRANDON MILL, LLC, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 18-2308 (RMC) |
| FEDERAL DEPOSIT INSURANCE | ) |
| CORPORATION, as Receiver for | ) |
| FIRST NBC BANK, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

Plaintiffs Brandon Mill, LLC and H. Pace Burt, Jr. complain that the Federal Deposit Insurance Corporation (FDIC), acting as receiver for a now-defunct Louisiana bank, breached its fiduciary duty and contractual obligations by failing to respond to Plaintiffs' request for consent to refinance a historic redevelopment project in Greenville, South Carolina. Plaintiffs claim that FDIC is liable in contract and in tort by interfering with Plaintiffs' effort to refinance a construction loan, which resulted in Plaintiffs receiving less favorable terms on a subsequent loan. FDIC opposes, arguing that Plaintiffs have failed to establish that a contract existed or that FDIC owed Plaintiffs any relevant legal duties. The matter is ripe for review.[1]

FDIC argues that the Court lacks subject matter jurisdiction over the tort counts in Plaintiffs' Complaint, which must be brought against the United States under the Federal Tort Claims Act, and not against an individual agency such as the FDIC. Plaintiffs ask the Court to

---

[1] Def.'s Mot. to Dismiss (Mot.) [Dkt. 7]; Pls.' Reply in Resp. & Opp'n to Def.'s Mot. to Dismiss (Opp'n) [Dkt. 9]; Reply Mem. in Supp. of Def.'s Mot. to Dismiss (Reply) [Dkt. 10].

accept their proposed Amended Complaint, which substitutes the United States of America for FDIC as defendant to the tort counts.[2] FDIC asks the Court to disallow the Amended Complaint, arguing that the counts as amended could not withstand a motion to dismiss, and that all counts are infirm.

The Court will grant FDIC's Motion to Dismiss as to all counts. The Court will deny Plaintiffs' Motion to Amend the Complaint because it would be futile.

## I. FACTS

H. Pace Burt, Jr. is a real estate developer who purchases, renovates, and operates historic properties through limited liability companies (LLCs). Compl. [Dkt. 1] ¶¶ 6-7. The LLCs take advantage of federal and state tax credits, such as the federal rehabilitation tax credit, 26 U.S.C. § 47, which are available to owners who renovate and restore historic structures. *Id.* ¶ 9. One such historic property was a textile mill complex in Greenville, South Carolina called Brandon Mill, which Mr. Burt planned to convert into loft apartments (the Project). *Id.* ¶ 23. Mr. Burt invested $1 million in personal funds in the Project and expected to receive a developer fee of $2.5 million at the conclusion of the Project. *Id.* ¶ 30.

In 2015, Mr. Burt formed several LLCs to own, operate, and generate tax credits for the Project. *Id.* ¶ 24. Mr. Burt formed Brandon Mill, LLC, to serve as the owner and operator of the Project (Mill Owner). *Id.* ¶ 25. Mill Owner consisted of two members: Brandon Mill Tenant, LLC (Mill Tenant) and Brandon Mill Investor, LLC (Mill Investor). *Id.* Mill Tenant was the lessee of the Project. NBC Historic Tax Partners (Tax Partners), a Louisiana LLC that was a subsidiary owned by First NBC Bank (First NBC or the Bank), invested in Mill

---

[2] Ex. 1, Opp'n, Am. Compl. [Dkt. 9-1]. The proposed Amended Complaint also adds a count for intentional interference with prospective contractual relations.

Tenant as an "investor member." *Id.* ¶¶ 32-33. Tax Partners' primary motivation for investing in Mill Tenant was to receive the tax credits generated by the Project. A separate entity, Brandon Mill Manager, LLC (Mill Manager) was formed to serve as the managing member of Mill Tenant. *Id.* ¶ 27. Mr. Burt owns a 45% membership interest in Mill Manager.

The relationship between Mill Manager and Tax Partners was set forth in the Mill Tenant Operating Agreement (MT Operating Agreement). *Id.* ¶ 35; *see also* Ex. 2, Opp'n, MT Operating Agreement [Dkt. 9-1]. The MT Operating Agreement stated that Mill Manager was responsible for the day-to-day operations of Mill Tenant; however, Mill Manager could not cause Mill Tenant to incur debt without the consent of Tax Partners. *Id.*; *see also* MT Operating Agreement at 20. While Tax Partners had the right to withhold consent to refinance, the MT Operating Agreement stated that consent "may not be unreasonably withheld." Opp'n at 11; *see also* MT Operating Agreement at 6. A related governing document was the Master Lease between Mill Owner and Mill Tenant. Ex. 3, Opp'n, Master Lease [Dkt. 9-1]. The Master Lease stated that Mill Owner could only refinance the Project's construction loan with the approval of Tax Partners, the investor member in the Project. Compl. ¶ 36; *see also* Master Lease at 28. The Master Lease also stated that Tax Partners could grant or withhold consent to refinance the construction loan "in [its] sole and absolute discretion." Master Lease at 28. A third governing document, the Mill Owner Operating Agreement between Mill Tenant and Mill Investor (MO Operating Agreement), apparently provided that Mill Tenant's consent was required for Mill Owner to refinance the Project's construction loan. Compl. ¶ 36.[3]

Mill Owner financed construction of the Project through an $18 million loan from BB&T Corporation (the BB&T Construction Loan). *Id.* ¶ 31. The BB&T Construction Loan

---

[3] Neither party has provided a copy of the MO Operating Agreement.

was not permanent financing; the terms were less favorable than what Mill Owner hoped to negotiate once the Project achieved 80% occupancy and became eligible for permanent financing. *See id.* ¶¶ 12, 31. The BB&T Construction Loan had a floating interest rate, which exposed the Project to the risk of an increase in the loan interest rate, and the Loan required a personal guaranty from Mr. Burt. In early February 2017, the Project achieved 80% occupancy and Mill Owner began seeking opportunities to refinance the BB&T Construction Loan. *Id.* ¶ 37. Mr. Burt's LLCs had worked with First NBC in the past, and on previous projects First NBC had provided "timely consent to the LLCs incurring and refinancing debt." *Id.* ¶ 19.

In April of 2017, the Louisiana Office of Financial Institutions closed First NBC and FDIC was named receiver for First NBC. *Id.* ¶ 38. Plaintiffs claim that soon after, FDIC notified Plaintiffs that it would be assuming Tax Partners' role in the Project. Specifically, Plaintiffs claim that an individual named "Brad Calloway, who had been employed by First NBC Bank and was retained and employed by the FDIC, officially notified Mill Tenant and Mill Manager that, in its capacity as receiver for First NBC Bank, the FDIC would be operating and acting for Tax Partners." *Id.* ¶ 39. Plaintiffs note that FDIC began looking for ways to liquidate First NBC's assets and, in May 2017, Mr. Calloway asked Mill Manager to make an offer to purchase Tax Partners' membership interest in Mill Tenant. *Id.* ¶ 41. Mill Manager offered approximately $90,000 but FDIC did not respond. *Id.* ¶¶ 41-42.

In April and June 2017, the Project received an offer of financing from Arbor Commercial Funding for refinancing of the BB&T Construction Loan (the Arbor Terms). *Id.* ¶ 43. The Arbor Terms included a principal loan of $20 million, which Plaintiffs state was an amount necessary to refinance the $18 million balance on the Construction Loan, repay Mr. Burt his $1 million investment in the Project, and cover the $2.5 million developer fee. *Id.* ¶ 44. The

Arbor Terms included a projected interest rate of 3.96% and did not require a personal guaranty from Mr. Burt. Plaintiffs claim that during the summer of 2017, they made repeated requests that FDIC consent to refinancing under the Arbor Terms; however, FDIC took no action.[4]

In October 2017, Brandon Mill was able to find an alternative commitment to refinance the BB&T Construction Loan from Synovus Financial Corporation (the Synovus Commitment). *Id.* ¶ 55. The Synovus Commitment was for a loan of $18 million, with an interest rate of 4.15%, and required Mr. Burt's personal guaranty. Plaintiffs claim that FDIC initially "promis[ed] to consider the Synovus Commitment, but tied that issue to the terms on which Tax Partners would 'exit' the deal, i.e. the purchase of Tax Partners' interest in Mill Tenant." *Id.* ¶ 57. Mr. Burt then threatened FDIC with legal action if it did not consent to the Synovus Commitment, and FDIC consented to the refinancing. *Id.* ¶ 59. Plaintiffs allege that despite giving consent, "FDIC continued to use improper leverage in an attempt to force Mill Manager to buy out Tax Partners' interest in Mill Tenant at an excessive price." *Id.* ¶ 60. Specifically, in November 2017, an FDIC employee demanded that Mill Manager make an offer to purchase Tax Partners' interest in the $6 to $10 million range, far in excess of the $90,000 offer that Mill Manager had made in May 2017. *Id.*

Mill Owner closed on refinancing with Synovus in January 2018. *Id.* ¶ 61. Plaintiffs claim that since the amount of the Synovus Commitment was only for $18 million, Mill Owner "does not currently have the capital necessary to fund the $2.5 million developers [sic] fee." *Id.*

---

[4] Plaintiffs state that FDIC acknowledged receiving the requests but did not take further action. *Id.* ¶¶ 45-46.

In March 2018, Brandon Mill and Mr. Burt each filed administrative claims with FDIC for damages resulting from FDIC's failure to approve the refinancing with Arbor. Mot. at 4. On August 8, 2018, FDIC disallowed both administrative claims. *Id.* Plaintiffs then filed this lawsuit in October 2018 alleging breach of fiduciary duty, breach of contract, negligence, and violations of the South Carolina Limited Liability Company Act.[5] Compl. ¶¶ 67-96.

On February 28, 2019, FDIC filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), for failure to state a claim upon which relief can be granted and for lack of subject-matter jurisdiction. *See* Mot. FDIC argues that Plaintiffs fail to state a contract claim against FDIC because there was no contract between Plaintiffs and FDIC or First NBC. *Id.* at 1. FDIC asserts that the tort claims also must fail since Plaintiffs have not demonstrated that FDIC, as receiver for First NBC, owed any duties to Plaintiffs. FDIC claims that Plaintiffs sued the wrong party, since Tax Partners is a distinct entity from First NBC, Tax Partners' parent company. Reply at 1-2.

FDIC further argues that the Court lacks subject-matter jurisdiction over the tort claims because Plaintiffs needed to bring such claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq*., and include the United States as a named defendant. *Id.* Plaintiffs apparently concede this point and "respectfully seek leave to amend their complaint to add the United States of America as the proper defendant for Plaintiffs' tort claims." Opp'n at 14 (citing LCvR 15.1). Plaintiffs attach a proposed Amended Complaint as Exhibit 1 to the

---

[5] The Complaint asserts five counts against FDIC: Count I (Breach of Fiduciary Duty); Count II (Breach of Contract); Count III (Negligence); Count IV (Breach of South Carolina Uniform Limited Liability Company Act, § 33-44-409 (Duty of Loyalty)); and Count V (Breach of South Carolina Uniform Limited Liability Company Act, § 33-44-409 (Duty of Care)).

Opposition.[6]  FDIC asks the Court to deny Plaintiffs' request to amend, arguing that the

Amended Complaint could not withstand a motion to dismiss.  Reply at 2-3.

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss Under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move to dismiss a

complaint, or any portion thereof, for lack of subject-matter jurisdiction.  Fed. R. Civ. P.

12(b)(1).  No action of the parties can confer subject-matter jurisdiction on a federal court

because subject-matter jurisdiction is both a statutory requirement and an Article III requirement.

*Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).  The party claiming

subject-matter jurisdiction bears the burden of demonstrating that such jurisdiction exists.  *Khadr*

*v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008); s*ee also Kokkonen v. Guardian Life Ins.*

*Co. of Am.*, 511 U.S. 375, 377 (1994) (noting that federal courts are courts of limited jurisdiction

and "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of

establishing the contrary rests upon the party asserting jurisdiction").

### B.  Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil

Procedure 12(b)(6) challenges the adequacy of a complaint on its face.  Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must contain sufficient factual information, accepted

as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court must

---

[6] The proposed Amended Complaint revises the Complaint by substituting the United States of America for FDIC as the defendant in Counts I, III, IV, and V.  The Amended Complaint also adds Count VI, Intentional Interference with Prospective Contractual Relations, against the United States.

assume the truth of all well-pleaded factual allegations and construe reasonable inferences from those allegations in favor of the plaintiff. *Sissel v. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). A court need not accept inferences drawn by a plaintiff if such inferences are not supported by facts set out in the complaint. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Further, a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678. In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

## C. Subject-Matter Jurisdiction under the Federal Tort Claims Act

The FTCA provides a limited waiver of sovereign immunity for civil actions seeking money damages from the United States.[7] The limited waiver of sovereign immunity only extends to the United States and not to specific agencies within the federal government. *See* 28 U.S.C. § 2679(a).[8] Thus, FTCA suits "must name the United States as defendant." *Goddard v. D.C. Redevelopment Land Agency*, 287 F.2d 343, 345-46 (D.C. Cir. 1961); *see also Cox v. Sec'y of Labor*, 739 F. Supp. 28, 29 (D.D.C. 1990) (granting defendant's motion to dismiss when plaintiff sued the Secretary of Labor rather than the United States); *Johnson v. Veterans Affairs Med. Ctr.*, 133 F. Supp. 3d 10, 17 (D.D.C. 2015) (granting defendant's motion to dismiss when plaintiff sued the Veterans Affairs Medical Center and failed to name the United States as a

---

[7] The FTCA confers exclusive jurisdiction in the district court over claims for money damages "for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1).

[8] The FTCA states that "[t]he authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title." *Id.*

defendant).  "Failure to name the United States as the defendant in an FTCA action requires dismissal for lack of subject-matter jurisdiction."  *Johnson*, 133 F. Supp. 3d at 17.

Before filing suit in court, the FTCA requires plaintiffs to exhaust their administrative remedies by "first present[ing] the claim to the appropriate Federal agency" and obtaining a "final disposition" in writing.  28 U.S.C. § 2675(a); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993).  The exhaustion requirement is jurisdictional.  *GAF Corp. v. United States*, 818 F.2d 901, 904 (D.C. Cir. 1987).

### D.  Amendment of Pleadings

Amendment of pleadings is governed by Federal Rule of Civil Procedure 15(a).[9] Rule 15(a)(1) allows parties to amend their pleadings once as a matter of right if they do so within specified timeframes.  Fed. R. Civ. P. 15(a)(1).  Rule 15(a)(2) provides that, once those timeframes have passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Leave to amend a complaint should be freely given "when justice so requires."  *Id.*

"A motion seeking leave to amend a pleading, like all motions, requires the moving party to 'state with particularity the grounds for seeking the order' and to 'state the relief sought.'"  *Saunders v. Davis*, No. 15-CV-2026 (RC), 2016 WL 4921418, at *16 (D.D.C. Sept.

---

[9] Rule 15(a)(1) provides in pertinent part:  "A party may amend its pleading once as a matter of course within:  (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1).  Rule 15(a)(2) further provides that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

15, 2016) (quoting Fed. R. Civ. P. 7(b)(1)(B)-(C)).[10]  The D.C. Circuit has held that "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought, *cf.* Fed. R. Civ. P. 7(b)—does not constitute a motion [to amend] within the contemplation of Rule 15(a)." *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993).  The grant or denial of leave to amend is within a court's discretion so long as certain factors are not present such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III.  ANALYSIS

#### A.  Jurisdiction

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (*quoting Kokkonen*, 511 at 377).  Here, Plaintiffs invoke the Court's jurisdiction under 12 U.S.C. § 1821(d)(6)(A), *see* Compl. ¶ 4, because the FDIC is acting as receiver for First NBC under the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA).  Pub. L. No. 101-73, 103 Stat. 183 (1989) (codified in scattered sections of 12 U.S.C.).  FIRREA "extends a special kind of federal jurisdiction outside the scope of 28 U.S.C. § 1331, the normal source of federal question jurisdiction." *Youkelsone v. FDIC*, 910 F. Supp. 2d 213, 222 (D.D.C. 2012).  FIRREA provides for *de novo* judicial review of the FDIC's determinations of administrative claims.  *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1141 (D.C. Cir. 2011).  Section 1821(d)(6) states that

---

[10] Federal Rule of Civil Procedure 7(b)(1) states that all motions must:  "(A) be in writing unless made during a hearing or trial; (B) state with particularity the grounds for seeking the order; and (C) state the relief sought."  Fed. R. Civ. P. 7(b)(1).

the U.S. District Court for the District of Columbia (or the district court for the district where the failed bank has its principal place of business) shall have jurisdiction over claims that are disallowed by the FDIC, so long as the claimant files suit within 60 days of the disallowance. *See* 12 U.S.C. § 1821(d)(6)(A).

In this case, it is undisputed that Plaintiffs filed administrative claims with the FDIC. *See* Mot. at 4; Opp'n at 6. FDIC disallowed the administrative claims on August 8, 2018, and Plaintiffs filed suit in this Court within 60 days, on October 5, 2018. Thus, jurisdiction is proper under FIRREA.

Nonetheless, the Court lacks subject-matter jurisdiction over the tort claims brought against FDIC. The Federal Tort Claims Act provides the exclusive remedy for torts committed by government employees in the scope of their employment, *see* 28 U.S.C. § 2679(a), and the United States is the only proper defendant. *Goddard*, 287 F.2d at 345-46. Because Plaintiffs did not state a claim against the United States and instead sued FDIC, the Court lacks subject-matter jurisdiction over Counts I, III, IV, and V. Plaintiffs apparently recognize their error in not including the United States as the defendant and have requested leave to amend the Complaint. *See* Opp'n at 14-15.

**B. Did Plaintiffs Properly Move to Amend the Complaint?**

FDIC argues that Plaintiffs' request to amend is improper because Plaintiffs raised the request in their Opposition and did not separately move. Reply at 3-4. FDIC asserts that "if Plaintiffs desire to amend their pleadings to add exhibits and facts they must do so by motion, not argument and exhibits provided only in their Opposition." *Id.* at 4. FDIC cites case law standing for the proposition that complaints may not be amended through opposition briefs.

*See* Reply at 4 n.8 (citing *Arbitraje Cases de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F.

Supp. 2d 165, 170 (D.D.C. 2003); *Carter v. Carson*, 241 F. Supp. 3d 191, 197 (D.D.C. 2017)).

FDIC misinterprets Plaintiffs' request. Plaintiffs are seeking to amend pursuant to

the proposed Amended Complaint attached as Exhibit 1—not by adopting separate exhibits to

the Opposition. The mere fact that Plaintiffs' request to amend was attached to the Opposition

does not make it impermissible.[11] A "bare request" from Plaintiffs for an amendment is not

enough. *Confederate Mem'l Ass'n*, 995 F.2d at 299. Here, at least with respect to the original

tort claims, Plaintiffs provided more than a "bare request" for an amendment by acknowledging

their initial pleading error. Plaintiffs also complied with the Local Civil Rule requiring motions

to amend to include a copy of the proposed pleading. *See* LCvR 15.1. Plaintiffs have properly

moved to amend.

### C. Federal Rule of Civil Procedure 15(a)(1)

FDIC is correct that Plaintiffs cannot move to amend under Rule 15(a)(1). Fed.

R. Civ. P. 15(a)(1). Rule 15(a)(1) states that a party may amend its pleadings once as a matter of

right within 21 days after service of a motion to dismiss under Rule 12(b). *Id.* Here, FDIC filed

the motion to dismiss on February 28, 2019, and Plaintiffs did not file the motion to amend until

March 29, 2019—29 days after the motion to dismiss. Therefore, Plaintiffs missed the deadline

under Rule 15(a)(1).

---

[11] The cases that FDIC cites are distinguishable from this case. In both cited cases, plaintiffs included new information in an opposition but neither requested leave to file an amended complaint nor attached a proposed amended complaint. *See U.S. Postal Serv.*, 297 F. Supp. 2d at 170; *Carter*, 241 F. Supp. 3d at 197. Here Plaintiffs have moved to introduce new information in an Amended Complaint attached to the Opposition.

**D. Federal Rule of Civil Procedure 15(a)(2)**

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend should be freely given when justice so requires "[i]n the absence of any apparent or declared reason" not to do so, which might include "undue delay, bad faith . . ., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [or] futility of amendment." *Foman*, 371 U.S. at 182. A district court has broad discretion in interpreting and applying the *Foman* standard. Here, there is no issue of undue delay and FDIC would not be prejudiced by the amendment; this case is in its early stages and the proposed amendments do not alter the nature or scope of the case. *See Wharf, Inc. v. District of Columbia*, 321 F.R.D. 25, 30 (D.D.C. 2017). Further, there has been no allegation of bad faith on the part of Plaintiffs.

FDIC argues, however, that Plaintiffs' Amended Complaint would be futile. An amendment is futile if it "could not withstand a motion to dismiss." *Pietsch v. McKissack & McKissack*, 677 F. Supp. 2d 325, 328 (D.D.C. 2010). FDIC asserts that "Plaintiffs fail to allege critical elements of their tort claims," namely, showing that legal duties existed between FDIC and Plaintiffs. Reply at 3.

The Court proceeds to consider whether the tort claims, as amended, could withstand a motion to dismiss under South Carolina law.[12]

*1. Can FDIC as receiver for First NBC be sued for the conduct of Tax Partners?*

As a preliminary matter, FDIC argues that Plaintiffs' claims are improperly brought against FDIC as receiver for First NBC. FDIC asserts that Plaintiffs "disregard the corporate distinction" between Tax Partners, a former wholly-owned subsidiary of the Bank, and

---

[12] The parties agree that South Carolina law governs the legal sufficiency of Plaintiffs' causes of action. *See generally* Mot.; *see also* Opp'n at 6 n.2.

the Bank. Reply at 1-2. FDIC notes that it was appointed receiver of First NBC but not as receiver of Tax Partners. FDIC argues that "Plaintiffs allege no facts to support disregarding the form of legally separate entities." *Id.* at 5.

"It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (quoting Douglas & Shanks, *Insulation from Liability Through Subsidiary Corporations*, 39 Yale L.J. 193 (1929)). However, a parent corporation can be held directly liable if the alleged wrong can be traced to the parent corporation or "'the parent is directly a participant in the wrong complained of.'" *Id.* at 64 (quoting Douglas & Shanks at 208). Here, Plaintiffs allege that FDIC contacted Mill Tenant and Mill Manager shortly after becoming receiver for First NBC and notified them "that, in its capacity as receiver for First NBC Bank, FDIC would be operating and acting for Tax Partners." Compl. ¶ 39; Am. Compl. ¶ 40. Plaintiffs' allegations are aimed at FDIC's direct role in consenting to a loan modification. Plaintiffs have sufficiently pled a theory of direct liability under which FDIC, acting as receiver for First NBC, participated in the conduct alleged in the Amended Complaint.

 2. *Breach of Fiduciary Duty (Count I) and Breaches of South Carolina Uniform Limited Liability Company Act Duties of Care and Loyalty (Counts IV and V)*

Plaintiffs' proposed Amended Complaint asserts claims against the United States for breach of fiduciary duty and for breaches of the duties of care and loyalty under the South Carolina Uniform Limited Liability Company Act (Uniform LLC Act). Plaintiffs claim that FDIC breached these duties by "failing to timely respond to the request to sign off on new financing" and by "threatening and actually interfering with the financing of Brandon Mill, LLC." Am. Compl. ¶¶ 71, 90, 98.

South Carolina's Uniform LLC Act, S.C. Code §§ 33-44-101 to 33-44-1208, governs the relationship between members of limited liability companies. Section 33-44-409 establishes different standards of care depending on whether the LLC is member-managed or manager-managed. *See* S.C. Code § 33-44-409. By default, LLCs are member-managed, which means that members have equal rights and duties in the management of the company's business. *See id.* §§ 33-44-101(12) and 33-44-404(a). In the articles of organization, an LLC may be designated as manager-managed, which means that a named manager has authority to make day-to-day business decisions without the consent of members. *See id.* §§ 33-44-101(11) and 33-44-404(b)-(c).

The Uniform LLC Act provides that only two fiduciary duties apply in the context of an LLC—those of care and loyalty.[13] In member-managed LLCs, members owe duties of care and loyalty to all other members. *Id.* § 33-44-409(a). Similarly, in manager-managed LLCs, the manager owes these fiduciary duties to members. *Id.* § 33-44-409(h)(2). However, in manager-managed LLCs, members do not necessarily owe reciprocal fiduciary duties to the company or to other members. The Uniform LLC Act provides that a member who is not designated as a manager, and who does not exercise managerial authority, "owes no duties to the company or to the other members solely by reason of being a member." *Id.* § 33-44-409(h)(1).

Here, it is undisputed that Mill Tenant was a manager-managed LLC. *See* Am. Compl. ¶ 36; Mot. at 3. The MT Operating Agreement designates Mill Manager as the

---

[13] The Uniform LLC Act also provides that principles of law and equity supplement the statutory scheme where no specific statutory provision applies. *See* S.C. Code § 33-44-104(a) ("Unless displaced by particular provisions of this chapter, the principles of law and equity supplement this chapter.").

"Managing Member," with broad oversight over day-to-day operations, while Tax Partners is the "Investor Member," with limited operational authority. *See* MT Operating Agreement at 11, 37-44. Accordingly, while Mill Manager owed fiduciary duties of loyalty and care to Mill Tenant and to Tax Partners, Tax Partners did not automatically owe such duties to Mill Tenant or to Mill Manager. Plaintiffs have only provided legal conclusions, but no facts, to support their argument that such duties existed in this relationship. This Court need not accept as true the legal conclusions set forth in the Amended Complaint. *See Iqbal*, 556 U.S. at 678.

The fact that Plaintiffs have not shown legal duties flowing from Tax Partners to Mill Manager and Mill Tenant renders it implausible that Tax Partners, or First NBC, would owe fiduciary duties to Plaintiff Burt. Plaintiffs claim that Mill Manager is synonymous with Mr. Burt and that "Mr. Burt is the real party in interest" harmed by actions injurious to Mill Manager. Opp'n at 9 n.3. Whatever the truth of Mr. Burt's injury, Plaintiffs have provided no explanation as to how Tax Partners would owe fiduciary duties to Mr. Burt individually despite not owing duties to Mr. Burt's LLCs. Similarly, Plaintiffs have only provided legal conclusions, but no factual support, for their claim that Tax Partners owed fiduciary duties to Mill Owner. Leave to amend will be denied as to Count I, Breach of Fiduciary Duty; Count IV, Breach of South Carolina Uniform Limited Liability Company Act, § 33-44-409 (Duty of Loyalty); and Count V, Breach of South Carolina Uniform Limited Liability Company Act, § 33-44-409 (Duty of Care), because the proposed amendment would be futile.

### 3. Negligence (Count III)

"To establish a negligence cause of action under South Carolina law, the plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." *J.T. Baggerly v. CSX Transp., Inc.*, 370 S.C. 362, 368-69 (S.C. 2006).

Generally under South Carolina law, "[a] breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie." *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 320 S.C. 49, 54-55 (S.C. 1995). Therefore, a negligence action cannot be brought when the parties are in privity of contract, unless "there is a special relationship between the alleged tortfeasor and the injured party not arising in contract." *Id.* at 55. "[T]he South Carolina Supreme Court has found a special relationship where the parties' relationship was one marked by professional duty . . . or by supervisor-supervisee relations." *Bahringer v. ADT Sec. Servs., Inc.*, 942 F. Supp. 2d 585, 590 (D.S.C. 2013); *see, e.g., Lloyd v. Walters*, 277 S.E.2d 888, 889 (S.C. 1981) (corporation could maintain negligence action against lawyer who had a professional duty to protect its interests); *Tommy L. Griffin Plumbing*, 320 S.C. at 55-56 (contractors could maintain negligence action against engineer who supervised them).

Here, Plaintiffs have not pleaded facts that demonstrate that legal duties existed outside of the parties' purported contractual obligations.[14] The proposed Amended Complaint states that the LLCs "are bound by interrelated contractual obligations and serve a single purpose, i.e. to make the Project a financial success for all parties involved, including Tax Partners." Am. Compl. ¶ 30. The Amended Complaint further states that Tax Partners—"[a]s a member of Mill Tenant and having a vested interest in the success of the Project"—"owed duties of reasonable case [sic], fiduciary duties and duties of good faith and fair dealing to the LLCs and to Mr. Burt." *Id.* ¶ 35. The Amended Complaint provides no factual support for why Tax

---

[14] The Court analyzes the facts as pleaded. As discussed in Section III.E, *infra*, Plaintiffs have also failed to state a claim against FDIC for breach of contract.

Partners owed the LLCs any duties not arising in contract, such as those arising under a special relationship.[15]  Thus, leave to amend will be denied for Count III because it would be futile.

### 4.  *Intentional Interference with Prospective Contractual Relations (Count VI)*

Plaintiffs' Count VI, intentional interference with prospective contractual relations, is brought only under the proposed Amended Complaint.  The Court considers it for the purposes of determining whether the count would be futile, *i.e.*, whether it could withstand a motion to dismiss.  *See Foman*, 371 U.S. at 182; *Pietsch*, 677 F. Supp. 2d at 328.  To recover on a claim for intentional interference with prospective contractual relations, a plaintiff must prove: "(1) the defendant intentionally interfered with the plaintiff's potential contractual relations; (2) for an improper purpose or by improper methods; (3) causing injury to the plaintiff."  *Crandall Corp. v. Navistar Int'l Transp. Corp.*, 395 S.E.2d 179, 180 (S.C. 1990).  Here, Plaintiffs argue that FDIC intentionally interfered with Plaintiffs' ability to refinance the BB&T Construction Loan by failing to consent to the Arbor Terms.  Am. Compl. ¶¶ 102-06.[16]

The proposed intentional interference count could not avoid a motion to dismiss. Plaintiffs suggest that FDIC's behavior was motivated by FDIC's desire to extract a higher selling price for Tax Partners' interest in Mill Tenant.  However, Plaintiffs provide no factual support behind the allegations that FDIC's conduct was intentional and improper.  Plaintiffs cite certain statements by FDIC that might constitute "improper leverage," but these alleged statements were made *after* FDIC failed to approve refinancing under the Arbor Terms.  *See id*. ¶ 61.  Statements that FDIC made after it failed to consent to the Arbor Terms are not relevant to

---

[15] As noted in Section III.D.2, *supra*, Plaintiffs have failed to state a claim that Tax Partners owed Plaintiffs fiduciary duties.

[16] The wording of Paragraph 104 of the Amended Complaint is somewhat unclear.  It states: "Specifically, FDIC intentionally interfered with Plaintiffs' ability to refinance the Brandon Mill, LLC construction loan by accepting the load [sic] from Arbor."  Am. Compl. ¶ 104.

Plaintiffs' claim that FDIC intentionally interfered with refinancing under those Terms. Moreover, Plaintiffs characterize FDIC's failure to consent as merely "negligent." *Id.* ¶ 49. Intentional torts, by definition, cannot be committed negligently. *See State Farm Fire & Cas. Co. v. Barrett*, 530 S.E.2d 132, 137 (S.C. Ct. App. 2000) (noting that "in the context of a cause of action alleging an intentional tort, which by definition cannot be committed in a negligent manner, the allegation of negligence is surplusage").

To the extent that Plaintiffs rely on a theory of negligent interference with prospective contractual relations, "South Carolina has declined to recognize a cause of action for the recovery of pure pecuniary harm resulting from a tortfeasor's negligent interference with a plaintiff's contractual relationships." *Self v. Norfolk Southern Corp.*, Nos. 06-1730, 06-2104, 2007 WL 540373, at *4 (D.S.C. Feb. 15, 2007) (citing *Edens & Avant Investment Properties, Inc. v. Amerada Hess Corp.*, 456 S.E.2d 407, 407 (S.C. 1995)).

None of the allegations in the complaint plausibly states a claim that FDIC's failure to consent to the Arbor Terms was intentional interference under South Carolina law. The Court will deny leave to add Count VI of the proposed Amended Complaint because the amendment would be futile.

### E. Breach of Contract (Count II)

To recover for breach of contract under South Carolina law, a plaintiff must establish: (1) a binding contract entered into by the parties; (2) breach or unjustifiable failure to perform the contract; and (3) damages suffered by the plaintiff as a direct and proximate cause of the breach. *Tidewater Supply Co. v. Industrial Elec. Co.*, 171 S.E.2d 607, 608 (S.C. 1969). Plaintiffs allege that FDIC breached its contractual obligations to Mill Owner and Mr. Burt, including duties of good faith and fair dealing, by, *inter alia*, "failing to timely review the Arbor terms sheet," "failing to consider and consent to the Arbor terms," and by "making threats."

Compl. ¶ 63. In the language of Count II, Plaintiffs allege that FDIC breached contractual

obligations "contained in the LLC's operating agreement." *Id*. ¶¶ 74-75. Plaintiffs do not

specify to which LLC agreement they refer, but the Complaint mentions both the MT Operating

Agreement and the MO Operating Agreement. *Id*. ¶¶ 35-36. The Complaint also mentions the

Master Lease between Mill Owner and Mill Tenant. *Id.* ¶ 36.

The Court notes that Plaintiff Burt is not a party to any of the agreements

referenced in the Complaint. "'Generally, one not in privity of contract with another cannot

maintain an action against him in breach of contract, and any damage resulting from the breach

of contract between the defendant and a third-party is not, as such, recoverable by the plaintiff.'"

*Fabian v. Lindsay*, 410 S.C. 475, 488 (S.C. 2014) (quoting *Windsor Green Owners Ass'n v.

Allied Signal, Inc.*, 605 S.E.2d 750, 752 (S.C. Ct. App. 2004)). Plaintiff Burt lacks the necessary

privity to enforce contractual rights against FDIC.[17] Therefore, the breach of contract claim

brought by Mr. Burt must fail.

Plaintiff Brandon Mill, LLC's (Mill Owner's) contract claim against FDIC

requires a different analysis. The only contract referenced in the Complaint to which Mill Owner

is a party is the Master Lease between Mill Owner and Mill Tenant.[18] Mill Owner is seeking to

enforce the Master Lease against FDIC, which assumed the role of Tax Partners, which was a

member of Mill Tenant. Under South Carolina law, the members of a limited liability company

are not normally liable for the debts, obligations, and liabilities of the LLC. *See* S.C. Code § 33-

---

[17] While Mr. Burt owns a 45% membership interest in Mill Manager, Compl. ¶ 27, Mr. Burt has
not claimed he is bringing a derivative action on behalf of that LLC. *Cf.* S.C. Code § 33-44-1101
("A member of a limited liability company may maintain an action in the right of the company if
the members or managers having authority to do so have refused to commence the action . . . .").

[18] Mill Owner is not a party to the MT Operating Agreement between Mill Manager and Tax
Partners or the MO Operating Agreement between Mill Tenant and Mill Investor.

44-303(a).[19]  While South Carolina courts have recognized that an LLC member can be liable for breach of contract if the member executed the contract, *see Johnson v. Little*, 426 S.C. 423, 432-34 (S.C. Ct. App. 2019),[20] Mill Owner has made no such claim here.  To the contrary, Mill Owner has identified no contract that it can enforce against FDIC.  Accordingly, the Motion to Dismiss will be granted as to Plaintiff Brandon Mill, LLC's breach of contract claim.

## IV.  CONCLUSION

For the reasons stated, the Defendant's Motion to Dismiss, Dkt. 7, will be granted. Plaintiffs' Motion Seeking Leave to Amend the Complaint, Dkt. 9, will be denied as futile.  A separate Order accompanies this Memorandum Opinion.

Date: July 31, 2019

_____
ROSEMARY M. COLLYER
United States District Judge

---

[19] S.C. Code § 33-44-303(a) provides that "the debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the company."

[20] *Little* held that the defendant was individually liable because "the contract [was] signed by Little both as an individual and in his capacity as the sole member and manager of the LLC." *Little*, 426 S.C. at 433.